IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 18-74 |
| | ) |
| | ) |
| JAYSON MARKULIN, | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

Before the Court is Defendant's Motion for Early Termination of Supervised Release (ECF 499) and the Government's Response in Opposition to same. ECF 502. For the reasons that follow, this Court will deny the Motion.

**I.    BACKGROUND**

This case arose out of an investigation by the Drug Enforcement Agency ("DEA") into the distribution of cocaine in Westmoreland and Allegheny Counties in Pennsylvania. ECF 273. During 2016, the DEA made several controlled buys of cocaine which identified Defendant as the supplier of large quantities of cocaine to another individual in Westmoreland County. Id. Based on the DEA's investigation, it was determined that Defendant was responsible for the distribution of more than 5, but less than 15 kilograms of cocaine. Id.

Defendant pled guilty to one count of criminal conspiracy and was sentenced to 57 months' imprisonment (which was the low end of the 57-71 month guideline range) and three years' supervised release. ECF 393. Defendant was able to be sentenced well below the mandatory minimum of a 10-year term of imprisonment because he qualified for the "safety valve." ECF 273.

Defendant did not appeal his conviction and was released to begin his term of supervised release on October 6, 2022. https://www.bop.gov/inmateloc/  Thus, Defendant has completed about two years and two months of his three-year supervised release term.

In his Motion, Defendant contends that after serving 19 months of his imprisonment term at FCI Morgantown, he finished serving his term of imprisonment at home with an ankle bracelet monitoring system until he began serving his three-year term of supervised release. ECF 499. Defendant also contends that since his release from FCI Morgantown, he has been gainfully employed at R&R Express as a logistics services manager, has remained married to his wife of 21 years, and has three children. Id. He claims that he has "totally changed his past life and [is] looking to continue down a righteous path." Id. Finally, Defendant claims that individuals in the U.S. Probation Office encouraged him to prepare this Motion.  Id.

The Government's Response presents information and argument at each of the § 3553(a) factors to convince this Court not to terminate Defendant's term of supervised release early.  For the reasons set forth below, the Court will deny Defendant's Motion.

## II.    STANDARD OF REVIEW

This Court may terminate a person's supervised release in accordance with 18 U.S.C. § 3583(e) when certain, specific conditions are met as follows:

> The Court may, after considering the factors set forth in 3553(a)(1), a(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation if it is satisfied that such action is warranted by the conduct of the defendant released and the interests of justice.

18 U.S.C. 3583(e)(1).

Thus, in regard to a request for early termination, § 3583(e)(1) instructs this Court to consider the following factors under § 3553(a):

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Sheppard*, 17 F.4th 449, 455 (3d Cir. 2021) (quoting *United States v. Melvin,* 978 F.3d 49, 52 (3d Cir. 2020). Although this Court need not make specific findings for each factor; rather, a statement that this Court considered these factors is sufficient. *Melvin*, 978 F.3d at 52-53. Exceptional, extraordinary, new or unforeseen circumstances "may be *sufficient* to justify early termination of supervised release" but are not necessary. *Melvin,* at 53 (emphasis in original).

### III.   ANALYSIS

The Court begins its analysis by considering the first of the six § 3553(a) factors – the nature and circumstances of the offense and Defendant's history and characteristics.

According to Defendant's presentence investigation report, this case resulted from an investigation by the Drug Enforcement Agency (DEA) into the distribution of cocaine in Westmoreland and Allegheny Counties in Pennsylvania. ECF 273, p. 6. In August of 2016, the DEA interviewed a Pennsylvania State Police confidential informant who identified one of Defendant's co-conspirators, Albert Mastrippolito, as a distributer of multiple-ounce quantities of cocaine in Westmoreland County, and identified Defendant, as Mastrippolito's cocaine source of supply. Id. DEA agents worked with the confidential informant and confirmed that Defendant

was, in fact, Mastrippolito's source of supply. Id. Over the course of this investigation, DEA made several controlled purchases of cocaine from Defendant and confirmed that he was supplying other co-conspirators with quantities of cocaine. Id. The multiple controlled purchases of cocaine from Defendant weighed, in the aggregate, 680 grams. Id., p. 7. These were serious crimes and the Court's sentence, including the three-year term of supervised release was appropriate given the nature of the offense and Defendant's role in the conspiracy.

Defendant, a college graduate and union member, had no criminal history whatsoever at the time he was indicted in this case. Id. The Court considered this information and applied the safety valve so that Defendant could be sentenced to 57 months, which was well-below the mandatory ten-year minimum, and the lowest end of the guideline range. Thus, the Court, in fashioning Defendant's sentence, already considered and gave Defendant the benefit of his crime-free, law-abiding status until he engaged in the instant criminal activity. Therefore, the Court does not find that this first factor weighs in favor of an early termination of supervised release.

Second, the need to afford adequate deterrence, protect the public from future crimes of Defendant, provide him with needed training, medical care or other correctional treatment in the most effective manner is best met by not terminating Defendant's supervised release early. Given that Defendant went from no known criminal activity over the course of his adult life to becoming a supplier of cocaine around the ages of 47 and 48, for other cocaine dealers across two western Pennsylvania counties, is concerning. This Court applauds the fact that Defendant has maintained full-time employment since his release from prison and is hopeful that Defendant will continue to thrive as a productive member of our society, but notes that Defendant's successful return to a productive work life has taken place while having to comply with the terms

and conditions of his supervised release. These terms and conditions help Defendant maintain his direction down the "righteous path" and protect the public by giving Defendant a framework within which to work. Therefore, the Court does <u>not</u> find that this second factor weighs in favor of a termination of supervised release.

Next, the Court considered the kinds of sentence and sentencing range established for Defendant's crimes, and as noted above, because this was Defendant's first criminal conviction, he was able to benefit from the application of the safety valve which enabled this Court to deviate from the 10-year mandatory minimum for his offense, and sentence him to 57 months imprisonment, the lowest end of the guideline range. Therefore, because this Court has already carefully considered the kinds of sentence and conferred a large benefit on the Defendant with respect to arriving at his sentence, the Court does <u>not</u> find the third factor to weigh in favor of Defendant.

Finally, when this Court sentenced Defendant and each of the co-conspirators in this case, the Court carefully reviewed the potential sentences for each co-conspirator, along with the information contained in their respective Presentence Investigation Reports. Accordingly, when this Court arrived the decision to sentence Defendant to 57 months' imprisonment and three years' supervised release, not only did the Court take into consideration Defendant's own personal situation, characteristics, and criminal history, but it also considered the potential sentences of his co-defendants, so as <u>not</u> to create a sentencing disparity among Defendant and his co-defendants. Thus, Defendant's sentence was carefully crafted so as not to create a sentencing disparity, and to alter it now, would have the opposite effect.[1]

---

[1] The Court did not discuss the fourth or sixth factor under § 3553(a) because, there is no relevant policy statement issued by the Sentencing Commission which would impact Defendant's sentence or this Motion, nor was any restitution ordered in this case.

Because Defendant's Motion does not highlight any exceptional, extraordinary, new or unforeseen circumstances, and because the Court's application of the § 3553(a) factors does not favor early termination of his supervised release, the Defendant's Motion (ECF 499)  is DENIED.  The Court commends Defendant on his successful return to society, and hopes that he continues to comply with the final few months of his supervised release terms.

SO ORDERED, this 6th day of December, 2024.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc:  All ECF Counsel of Record

and

Jayson Markulin
170 Field Club Drive
McKees Rocks, PA 15136